MENARD
v.
SCUDDER.

---

## SAMUEL T. WILLIAMSON v. ALEXANDER NORTON, Master, &c.

A slave, whose appearance and color gave no indication of African extraction, passed himself as a white person, and took passage on a steamer. After several days, the captain suspected his true condition, and delivered him to the civil authorities of Memphis, as a runaway. In an action, by the master, for damages, it was held that the captain was not liable.

APPEAL from the Second District Court of New Orleans, *Lea*, J. *Wolfe* and *Singleton*, for plaintiff. *R. M. Karney*, for defendant. By the court:

ROST, J. I am of opinion, that there is no error in the amount allowed to the plaintiff in the judgment. The fact that the slave, carried away by the defendant, had taken his passage as a white man, and was suffered, without remark or objection from the passengers, to sit at the first table, and near the lady passengers, satisfied me, that the defendant might well have been deceived as to his color. The promptness with which he arrested him, and caused him to be confined in jail, at Memphis, on the mere suspicion that he was a slave, fully exonerates him from the intention of violating the act of 1840. I think, with our predecessors, that the presumption created by the act of 1840, only exists when the master himself finds his slave on board of the vessel; and is not applicable to cases in which the captain finds the slave, and takes the steps pointed out by that act to secure him. See *Winston* v. *Footer et al.*, 5 R. R. 114. In the case of *Buddy* v. *The Steamer Vanlear*, we intimated, that the fine, imposed by the act of 1840, should be inflicted after conviction in a criminal prosecution. See 6 Ann. 34.

While I acquit the defendant from all criminal intent, it cannot be denied that, in consequence of carrying away the plaintiff's slave, the latter suffered the damages allowed by the district court; and I am of opinion, that the allowance was properly made, under the prayer for general relief and the provisions of articles 2294 and 2295 of the code. But, for these damages, the privilege, allowed by the act of 1840, did not exist; and the sequestration should have been set aside, at the costs of the plaintiff. In this respect, the judgment must be amended. And, on the remainder of the case, the court being equally divided, the judgment of the district court must be affirmed.

It is therefore ordered and decreed, that the judgment of the court below be amended, and the sequestration sued out by the plaintiff set aside. It is

further ordered, that, with this amendment, the judgment be affirmed, the costs of the district court to be paid by the defendants, and those of this appeal and the sequestration, by the plaintiff.

EUSTIS, C. J., concurred.

SLIDELL, J., dissenting. I think there should have been judgment for the defendants. See *Hurst* v. *Wallace*, 5 L. R. 99; *Winsten* v. *Porter*, 5 R. R. 113; *Spalding* v. *Taylor*, 1 Ann. 195; and the testimony of *Underwood, Cole, Blanchard, Duval, Martin, Denning, Phillips*, respecting the color, hair, and general appearance of the slave. I do not think the testimony of the three last could be excluded, under the statute of 1840, it not being applicable to the case, for the reasons given in 5 R. R. 113.

PRESTON, J., concurred.

## SAME CASE—ON A RE-HEARING.

By the court:

PRESTON, J. We have again carefully reviewed the evidence in this case. The slave of the plaintiff, being well dressed and of a genteel deportment, took a cabin passage, on the steamboat Western World, going from New Orleans to the western country, crowded with passengers. His color was a shade lighter than a new saddle, with a clear skin, his hair dark, but straight. He sat at the first table, in the cabin, and near the ladies. His appearance did not indicate African extraction, but that of a person born in the South and exposed to the sun, a Mexican or Spaniard. No person suspected his negro blood, until, near Memphis, the steward of the boat expressed his suspicion. An *eclair cissement* was had, and the master of the boat took the responsibility of delivering him to the civil authorities at Memphis as, probably, a runaway slave. He was brought to New Orleans, and sold at auction. The auctioneer and another think the discovery of his African blood might have been easily made. All discoveries are easy after they are made. The passengers of a crowded boat did not make the discovery in traveling seven or eight hundred miles with him, although he sat generally near the head of the table—although, one of them says, he had the appearance of a modest unassuming gentleman; another represents him as freely mingling with society. Even after the discovery, many thought the master to blame in acting without more indidications of color, or proof. We think he boldly incurred risks, for the benefit of an unknown owner.

The master and officers of a steamboat, crowded with freight and passengers, have too much to do to scrutinize minutely the hair, skin, and complexion, of every one on board; and, if they act with ordinary care, are excusable, even if they overlook that which requires, out of their peculiar line, minute inspection to ascertain.

With these views of the general character of the evidence, and referring to the authorities cited by Justice Slidell, in the original opinion, we think the judgment of the district court should be reversed.

It is decreed, that the judgment of the district court be reversed, and that there be judgment for the defendants, with costs in both courts.